UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| BRANDON LAMONT KENNEDY, <br><br> Plaintiff, <br><br> v. <br><br> BRIAN ENGLISH, BRABBS, TRACI RIGGLE, TRACY WORDEN, and DIVISION OF INVESTIGATIONS AND INTELLIGENCE, <br><br> Defendants. | CAUSE NO. 3:23-CV-373-DRL-JEM |

OPINION AND ORDER

Brandon Lamont Kennedy, a prisoner without a lawyer, filed an amended complaint, alleging the defendants failed to protect him from being stabbed while incarcerated at Miami Correctional Facility. ECF 8. His first complaint did not state a claim because he sued only Miami Correctional Facility, which is not a proper defendant. ECF 6 at 1-2. He was told he need to "name as defendants the correctional staff who were personally involved in the alleged constitutional violation" and "identify who he told about his fears, what he told them, and what their response was." *Id.* at 2-3. In response, he submitted this amended complaint, naming as defendants Classification Officer Traci Riggle, Classification Supervisor Tracy Worden, Counselor Ms. Brabbs, Warden Brian English, and the Division of Investigations and Intelligence. ECF 8.

The court must now review the merits of the amended complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted,

or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotations and citations omitted).

Mr. Kennedy alleges that he was stabbed on May 21, 2022, by an inmate named Jordan.[1] There are no allegations that Mr. Kennedy knew this first attack was coming, but he alleges that afterwards his life was in danger because a hit had been put out on him. Right after the attack, Mr. Kennedy was placed in Protective Custody while the Division of Investigation and Intelligence investigated the attack, but that same night he was placed back into general population.

Mr. Kennedy alleges that after he was placed in general population, he immediately started filing protective custody forms, grievances, and even emailed the governor's office. In June 2022, he says he spoke to mental health about his concerns, and his mental health counselor reported his concerns to custody staff. He filed a classification appeal, which he says Classification Officer Traci Riggle ignored.

---

[1] The injuries Mr. Kennedy received are documented in the medical records he attached to his complaint. He was treated four hours after the attack and told the nurse, "I was stabbed. He used the metal part off the shelf in the room." ECF 1-1 at 1. The nurse noted, "Patient presents with 7 lacerations to right forearm that are actively bleeding. 1 laceration to right upper arm actively bleeding. 1 laceration to right neck not actively bleeding. . . . Lacerations not requiring sutures. All wounds cleaned with 0.9 normal saline. Steri-strips applied with clean gauze covering." *Id.* at 3.

In August 2022, he was moved to I-Housing Unit—the same housing unit as his attacker. After appealing to Tracy Worden, the Classification Supervisor, and not getting a response, he spoke to his counselor who got him moved to K-Housing Unit.

On December 6, 2022, he told Ms. Brabbs, a counselor in the K-Housing Unit, that his life was in danger because people were trying to kill him. The next day, he submitted multiple protective custody forms, though he doesn't allege any of the defendants were responsible for reviewing them. He was not moved, and later that day inmate Jordan broke security during medline and stabbed him again.

Mr. Kennedy alleges that he was too scared to tell officers that he was injured. But after three days of not being able to breathe, he went to medical. At this point, he was placed in protective custody, where he stayed for three and a half months. He complains that his attacker was housed three cells from him and they had to shower at the same time, but no further harm to him was alleged.

The Eighth Amendment imposes a duty on prison officials "to take reasonable measures to guarantee the safety of inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "[P]rison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Id*. at 833. That said, not every such violent altercation violates the Constitution. *Hunter v. Mueske*, 73 F.4th 561, 565 (7th Cir. 2023). "Rather, only deliberate indifference to an inmate's wellbeing is actionable: a prison official is liable for failing to protect an inmate from another prisoner only if the official knows of and disregards an excessive risk to inmate health or safety." *Id*. (quotations, brackets, and citations omitted).

Accordingly, when an inmate is attacked by another inmate, the Eighth Amendment is violated only if "deliberate indifference by prison officials effectively condones the attack by allowing it to happen." *Haley v. Gross*, 86 F.3d 630, 640 (7th Cir. 1996). The defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "Exercising poor judgment . . . falls short of meeting the standard of consciously disregarding a known risk to his safety." *Lewis v. Richards*, 107 F.3d 549, 554 (7th Cir. 1997). "[A] complaint that identifies a specific, credible, and imminent risk of serious harm and identifies the prospective assailant typically will support an inference that the official to whom the complaint was communicated had actual knowledge of the risk." *Gevas v. McLaughlin*, 798 F.3d 475, 481 (7th Cir. 2015). General requests for help, expressions of fear, and even prior attacks are insufficient to alert guards to the need for action. *Klebanowski v. Sheahan*, 540 F.3d 633, 639–40 (7th Cir. 2008).

This case is similar to the facts in *Klebanowski*, 540 F.3d at 633, which concluded a prior attack coupled with statements that "he was afraid for his life and he wanted to be transferred off the tier" were insufficient to alert prison official to a specific threat to his safety that required action. Just as there, without additional facts about the hit Mr. Kennedy says was put on him, "there was nothing leading the officers to believe that [Mr. Kennedy] himself was not speculating regarding the threat he faced out of fear based on the first attack he suffered." *Id.* at 641. Thus, there is no basis to infer that any defendant was aware of a risk to Mr. Kennedy from remaining in general population.

4

Though the basis for his fear of inmate Jordan other than a prior attack is similarly vague, the court will assume for purposes of screening that Mr. Kennedy has plausibly alleged he faced a future threat from inmate Jordan. But even with that assumption, no defendant's deliberate indifference led to him being attacked a second time. When he raised issues about his safety in June 2022, he was moved to I-Housing Unit the next month, without any harm coming to him before he was moved. Though he says Classification Officer Traci Riggle ignored his request to be moved, her inaction did not prevent the move to I-Housing Unit. Then, in I-Housing Unit (where his attacker was also located), even though Classification Supervisor Tracy Worden did not respond to his classification appeal, his counselor got him moved to K-Housing Unit before any harm came to him. Finally, although he was attacked while living in K-Housing Unit, he was moved there to get away from I-Housing Unit, where his attacker lived. There are no facts alleged that any defendant was aware that Mr. Kennedy would be at risk from an inmate in another housing unit.

Mr. Kennedy also names as defendants Warden Brian English and the Division of Investigations and Intelligence. The warden is not mentioned in the body of the complaint, and he cannot be held responsible under 42 U.S.C. § 1983 based solely on the actions of his subordinates. *See Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009) (no supervisory liability under § 1983). The Division of Investigations and Intelligence is not a suable entity that can be held responsible for the actions of one or a few of its members. The complaint does not identify any individual person who was involved in the investigation of the attack, nor does the complaint identify what specific information

would have alerted that individual to an ongoing threat to his safety. The court does not minimize the harm Mr. Kennedy suffered. But the facts in the complaint do not allow an inference that any defendant disregarded a specific, credible threat to his safety.

"The usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). However, "courts have broad discretion to deny leave to amend where . . . the amendment would be futile." *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009). For the reasons previously explained, such is the case here.

For these reasons, this case is DISMISSED under 28 U.S.C. § 1915A.

SO ORDERED.

January 22, 2024                                         *s/ Damon R. Leichty*
                                                              Judge, United States District Court